1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   KWANZA GREEN,

11         Plaintiff,                    No. CIV S-10-0242 MCE EFB PS

12      vs.

13   ALLIANCE TITLE; CMG MORTGAGE,
     INC.; SELECT PORTFOLIO SERVICING,
14   INC.; NATIONAL DEFAULT SERVICING,
     CORP.; and DOES 1 through 100, inclusive,    ORDER AND
15                                                 FINDINGS AND RECOMMENDATIONS
          Defendants.
16   _____/

17       This case is before the undersigned pursuant to Eastern District of California Local Rule

18   302(c)(21).  *See* 28 U.S.C. § 636(b)(1).  Defendants Select Portfolio Servicing, Inc. ("SPS") and

19   National Default Servicing Corp. ("NDSC") removed the action from Solano County Superior

20   Court on January 29, 2010 on the basis of federal question jurisdiction.  Dckt. No. 1 (citing 28

21   U.S.C. §§ 1441(b), 1446(b), and 1331).

22       Currently pending are (1) defendant SPS's motion to dismiss plaintiff's complaint, Dckt.

23   No. 9; (2) defendant SPS's motion to expunge a lis pendens recorded by or on behalf of plaintiff,

24   Dckt. No. 16; (3) plaintiff's motion to remand this action to state court and request for sanctions,

25   Dckt. No. 19; (4) defendant CMG Mortgage, Inc.'s ("CMG") motion to dismiss plaintiff's

26   complaint, Dckt. No. 26; (5) plaintiff's motion to add Angelo Webb as a co-plaintiff in this

1

1  action and U.S. Bank National Association as a co-defendant in this action, Dckt. No. 28; (6)

2  plaintiff's motion for leave to file an amended complaint, Dckt. No. 46; and (7) plaintiff's

3  motion for permissive joinder to add Mortgage Electronic Registration Systems ("MERS") as a

4  co-defendant, Dckt. No. 44.

5  I.   Background

6       Plaintiff challenges the foreclosure sale of her home and the validity of a $295,000

7  refinance loan agreement, and the resulting Note and Deed of Trust, between defendant CMG

8  and Angelo Webb on August 18, 2006.  *See generally* Compl., Dckt. No. 1; *see also* Def. SPS's

9  Req. for Judicial Notice, Dckt. No. 10, Ex. 1.[1]  At the time the Note and Deed of Trust at issue

10 were executed, Angelo Webb was the only borrower on the title; CMG was the lender; Alliance

11 Title was the Trustee; and MERS was designated a nominee for the lender and the beneficiary

12 under the Deed of Trust.  *Id.*

13      Thereafter, on July 27, 2009, Webb transferred his interest in the property at issue to

14 himself and to plaintiff as joint tenants, and a Grant Deed reflecting that transfer was recorded on

15 August 17, 2009.  Def. SPS's Req. for Judicial Notice, Dckt. No. 10, Ex. 3.[2]  On August 7, 2009,

16 SPS, through NDSC, recorded a Notice of Default, and on August 28, 2009, MERS executed a

17 Corporate Assignment of Deed of Trust, wherein it assigned its beneficial interest in the Note

18 and Deed of Trust to U.S. Bank National Association, as Trustee, on Behalf of the Holders of the

19 CSMC Mortgage-Backed Pass-Through Certificate, Series 200701 ("U.S. Bank).  *Id.*, Exs. 2, 4.[3]

20

21      [1] SPS's request for judicial notice of this exhibit, the Note and Deed of Trust at issue herein
22 which was recorded on August 25, 2006 in the Solano County Recorder's Office, is granted.
   Judicial notice may be taken of "adjudicative facts" (e.g., court records, pleadings, etc.) and other
23 facts not subject to reasonable dispute and either "generally known" in the community or "capable
   of accurate and ready determination by resort to sources whose accuracy cannot be reasonably
24 questioned." Fed. R. Evid. 201(b).

25      [2] SPS's request for judicial notice of the Grant Deed is granted.  *See* n.1.

26      [3] SPS's request for judicial notice of the Notice of Default and Corporate Assignment of
   Deed of Trust is granted.  *See* n.1.

2

1    SPS, as servicing agent for U.S. Bank then executed a Substitution of Trustee, wherein it

2    substituted NDSC as trustee in place of Alliance Title.  *Id.*, Ex. 5.[4]  Thereafter, on December 14,

3    2009, NDSC recorded a Notice of Trustee's Sale setting the sale of the property at issue for

4    January 4, 2010.  *Id.*, Ex. 6.[5]  Finally, on January 4, 2010, the sale occurred, and the property at

5    issue reverted back to the beneficiary, U.S. Bank, as the highest bidder at the sale.  *Id.*, Ex. 7.[6]

6          Plaintiff's complaint, which was filed in state court on December 17, 2009, alleges that

7    on August 18, 2006, plaintiff "was led to believe she was entering into a loan agreement with

8    Defendant CMG Mortgage, Inc. for $295,000," and that "immediately after closing the refinance

9    loan, Plaintiff was instructed by Select Portfolio Servicing to make all her payments on the loan

10   to Select Portfolio Servicing."  Compl., Dckt. No. 1, ¶¶ 14, 15.  She asserts that all of the

11   defendants "are attempting to initiate an illegal non-judicial foreclosure sale proceeding under an

12   alleged power of sale to foreclose contained in an alleged note allegedly secured against the

13   property located at 980 Aster Street, Vallejo, Ca. 94589 [hereinafter "the subject property"],"

14   which plaintiff owns.  *Id.*, ¶¶ 16, 19.  Plaintiff contends that the "alleged promissory note was

15   never executed by Plaintiff, or if it was executed, has long since been lost or intentionally

16   destroyed, or paid in full, or assigned to a third party, such that [defendants] lacked standing to

17   initiate a foreclosure proceeding against the subject property," even though they did initiate such

18   proceedings.  *Id.*, ¶¶ 17-22.

19         Plaintiff alleges that defendants misled her, made material misrepresentations and

20   omissions, and defrauded her, in violation of various laws.  *Id.*, ¶¶ 62-84.  Specifically, plaintiff

21   alleges the following claims for relief:  (1) violations of the Home Ownership Equity Protection

22   Act ("HOEPA"), 15 U.S.C. §§ 1639 *et seq.*; (2) violations of the Real Estate Settlement

23

24         [4] SPS's request for judicial notice of the Substitution of Trustee is granted.  *See* n.1.

25         [5] SPS's request for judicial notice of the Notice of Trustee's Sale is granted.  *See* n.1.

26         [6] SPS's request for judicial notice of the Trustee's Deed Upon Sale is granted.  *See* n.1.

1  Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.*; (3) violations of the Truth in Lending

2  Act ("TILA"), 15 U.S.C. §§ 1605 *et seq.*; (4) violation of the Fair Credit Reporting Act

3  ("FCRA"), 15 U.S.C. § 1681; (5) fraudulent misrepresentation; (6) breach of fiduciary duty; (7)

4  unjust enrichment; (8) civil conspiracy; (9) civil RICO; (10) set aside illegal trustee sale; (11)

5  quiet title; (12) violation of California Business and Professions Code section 17200; (13)

6  wrongful foreclosure – violation of California Civil Code sections 2924, 2923.5, and 2923.6(a);

7  (14) usury; (15) predatory lending – violation of California Financial Code sections 4970-

8  4979.8; (16) unfair debt collection practices; and (17) slander of title.  *Id., ¶¶* 90-177.

9  II.    <u>Motion to Remand</u>

10          Plaintiff moves to remand this action back to Solano County Superior Court and seeks

11  sanctions against defendants for the alleged improper removal of the case.  Dckt. No. 19.

12  Plaintiff argues that the notice of removal was frivolous and was filed "on the eve of a multi-

13  million dollar trial."  *Id.* at 1, 2.  She contends that the removal notice misrepresents her claims

14  and "focuses on a (federal question) to which the plaintiff has not expressed is an essential cause

15  of action on the face of the complaint."  *Id.* at 2.  Plaintiff argues that "[b]ecause no essential

16  element on the face of the complaint raises questions of federal law, there is no federal

17  jurisdiction here."  *Id.* at 3.  Plaintiff is mistaken.

18          Defendants may remove to federal court "any civil action brought in a State court of

19  which the district courts of the United States have original jurisdiction."  *City of Chicago v. Int'l*

20  *College of Surgeons*, 522 U.S. 156, 163 (1997) (quoting 28 U.S.C. § 1441(a)).  Pursuant to 28

21  U.S.C. § 1331, the district courts are vested with original jurisdiction over cases "arising under

22  the constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

23          Here, plaintiff's complaint alleges several claims arising under federal statutes.

24  Specifically, she asserts claims for violations of HOEPA, 15 U.S.C. §§ 1639 *et seq.*; RESPA, 12

25  U.S.C. §§ 2601 *et seq.*; TILA, 15 U.S.C. §§ 1605 *et seq.*; FCRA, 15 U.S.C. § 1681; and the

26  federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*  Removal of

those claims was proper pursuant to 28 U.S.C. § 1441(a).  Additionally, removal of plaintiff's

supplemental state law claims was proper under 28 U.S.C. § 1441(c), which provides that

"[w]henever a separate and independent claim or cause of action within the jurisdiction

conferred by section 1331 of this title is joined with one or more otherwise non-removable

claims . . . , the entire case may be removed and the district court may determine all issues

therein. . . ."

Moreover, although plaintiff contends that the removal was improper because not all of

the defendants consented to the removal, it appears that neither Alliance Title nor CMG had been

served with process at the time of removal and thus did not need to join in or consent to the

removal.  *See generally Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n.1 (9th Cir. 1988)

(noting that all defendants must join in the notice of removal); *but see Salveson v. W. States

Bankcard Ass'n,* 731 F2.d 1423, 1429 (9th Cir. 1984) (superseded in irrelevant part by statute);

*Cmty. Bldg. Co. v. Maryland Cas. Co.*, 8 F.2d 678, 678-79 (9th Cir. 1925) (holding that

defendants who have not yet been served in the state court action need not join in the notice of

removal).  Here, the proof of service filed in the state court action on January 5, 2010 only

demonstrated service on SPS and NDSC.  There is no indication that either Alliance Title or

CMG had been served as of the time of removal.  Dckt. No. 31 at 4-5; *see also* Dckt. No. 1 at 4,

57.

Further, although plaintiff contends that this case was removed "on the eve of trial," it

does not appear that a trial has ever been scheduled in the state court action.  The April 13, 2010

hearing date that plaintiff references was for a case management conference, not a trial.  Dckt.

No. 32, Def. SPS's Req. for Jud. Notice in Opp'n to Pl.'s Mot. to Remand, Ex. 1.[7]  Therefore,

plaintiff's motion to remand and related request for sanctions are denied.

---

[7] SPS's request for judicial notice of this exhibit is granted.  A court may take judicial notice of court records.  *See MGIC Indem. Co. v. Weisman*, 803 F.2d 500, 505 (9th Cir. 1986); *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).

III.   Motions to Dismiss Plaintiff's Complaint

SPS moves to dismiss plaintiff's complaint for failure to state a claim or, in the alternative, for a more definite statement and/or to strike.[8]  Dckt. No. 9.  Additionally, CMG moves to dismiss plaintiff's complaint for failure to state a claim.  Dckt. No. 26.

A.   Standards

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Dismissal is appropriate based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, *Hospital Bldg. Co. v. Rex Hosp. Trs.*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869 (1969).  The court will "'presume that general allegations embrace those specific facts that are

---

[8] Although defendant NDSC joined in the removal of this action, is represented by the same counsel as SPS, and is referenced throughout SPS's reply brief in support of its motion to dismiss, NDSC does not appear to have joined in the motion to dismiss.  *See* Dckt. Nos. 9, 14.

1    necessary to support the claim.'"  *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256

2    (1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

3          Pro se pleadings are held to a less stringent standard than those drafted by lawyers.

4    *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir.

5    1985).  However, the court's liberal interpretation of a pro se litigant's pleading may not supply

6    essential elements of a claim that are not plead.  *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir.

7    1992); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

8    Furthermore, "[t]he court is not required to accept legal conclusions cast in the form of factual

9    allegations if those conclusions cannot reasonably be drawn from the facts alleged."  *Clegg v.*

10   *Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).  Neither need the court accept

11   unreasonable inferences, or unwarranted deductions of fact.  *W. Mining Council v. Watt*, 643

12   F.2d 618, 624 (9th Cir. 1981).

13         The court may consider facts established by exhibits attached to the complaint.  *Durning*

14   *v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).  The court may also consider facts

15   which may be judicially noticed, *Mullis v. U.S. Bankr. Ct.*, 828 F.2d at 1388, and matters of

16   public record, including pleadings, orders, and other papers filed with the court.  *Mack v. South*

17   *Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986).

18         A pro se litigant is entitled to notice of the deficiencies in the complaint and an

19   opportunity to amend, unless the complaint's deficiencies could not be cured by amendment.

20   *See Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

21         B.    Plaintiff's Claims

22               1.    HOEPA

23         Defendants move to dismiss all of plaintiff's loan origination claims, including plaintiff's

24   claim that defendants violated HOEPA, 15 U.S.C. §§ 1639 *et seq.*, by failing to make certain

25   disclosures prior to closing the refinance loan at issue on August 18, 2006.  Compl., Dckt. No. 1

26   at 32.  They argue that plaintiff's claims are premised on alleged misconduct at the loan

7

1    origination stage (in August 2006) and that plaintiff lacked any interest in the subject property.

2    Accordingly, defendants argue, plaintiff is not the real party in interest and lacks standing to

3    bring those claims.  Dckt. No. 9 at 15-16; Dckt. No. 22 at 3-5; *see also* Def. SPS's Req. for

4    Judicial Notice, Dckt. No. 10, Ex. 1.  Defendants contend that Angelo Webb was the owner of

5    the subject property and the only borrower on title at the time the Note and Deed of Trust were

6    originated, and that plaintiff did not have any ownership interest in the property until August 17,

7    2009, when a grant deed was filed making her a joint tenant with Webb.  *Id.*  Thus, they argue,

8    plaintiff cannot sue for injuries that only Webb could have suffered, noting that the substantive

9    law protects the *borrower* from fraudulent or wrongful conduct of the lender at origination.  *Id.*

10   According to defendants, since plaintiff did not obtain the loan or own the home at the time the

11   loan was obtained, she has no standing to allege a HOEPA claim based on disclosures

12   defendants allegedly failed to make at the time of the loan origination.  Dckt. No. 22 at 4.  The

13   court agrees.

14          Plaintiff acknowledges that she was not the owner of the subject property at the time of

15   the loan origination at issue nor did she obtain the loan at issue.  *See* Dckt. Nos. 28, 37

16   (acknowledging that the loan originated with Angelo Webb and not plaintiff).  Therefore, she is

17   not the real party in interest on this HOEPA claim and does not have standing to support her

18   HOEPA claim since she cannot allege an injury based on defendants' purported failures to make

19   certain disclosures prior to closing the refinance loan at issue.  *See* Fed. R. Civ. P. 17(a)(1) ("An

20   action must be prosecuted in the name of the real party in interest.").  Therefore, plaintiff's

21   HOEPA claim must be dismissed without leave to amend.

22          Plaintiff seeks leave to add Angelo Webb as a plaintiff, who did obtain the loan at issue.

23   Accordingly, the court will address defendants' other arguments in support of dismissal.[9]  As

24   SPS argues, since SPS was "not in any way involved in the loan origination process" and instead

25   _____

26          [9]  Plaintiff's motion to add Angelo Webb as a plaintiff is addressed below in Section IV.

8

1   "is merely the servicer to the Subject Loan," Dckt. No. 9 at 16, plaintiff has not and cannot state

2   a HOEPA claim against SPS for failure to provide disclosures prior to the closing of the

3   refinance loan.

4          Moreover, plaintiff's HOEPA claim is barred by the statute of limitations.  *See* Dckt. No.

5   9 at 16; Dckt. No. 22 at 5.  The loan at issue closed on August 18, 2006, but this action was not

6   filed until December 17, 2009.  Compl., Dckt. No. 1 at 11.  The statute of limitations for

7   violations of HOEPA based on failures to provide disclosures prior to the loan closing is one

8   year for affirmative relief and three years for a right to rescind. 15 U.S.C. §§ 1640(e), 1635(f); *In*

9   *re Cmty. Bank of N. Va.*, 418 F.3d 277, 304-05 (3d Cir. 2005)  ("[T]he Court notes that HOEPA

10  is simply a component of TILA, and thus, it is governed by the same statute of limitations.").

11  Since plaintiff has not alleged any facts suggesting that the statutes of limitation should be

12  equitably tolled, plaintiff's HOEPA claim is time barred.

13         2.   RESPA

14         Defendants also move to dismiss plaintiff's second claim for relief, which alleges that

15  defendants violated RESPA, 12 U.S.C. § 2607, by accepting charges "for the rendering of real

16  estate services which were in fact charges for services other than the services actually

17  performed." Dckt. No. 1 at 34.  Defendants argue that plaintiff is not the real party in interest

18  and lacks standing to bring her RESPA claim since, as discussed above, the claim is premised on

19  alleged misconduct at the origination stage of the loan at issue.   Plaintiff did not have an interest

20  in the subject property at the time the loan at issue originated (in August 2006).  Dckt. No. 9 at

21  15-16; Dckt. No. 22 at 3-5; *see also* Def. SPS's Req. for Judicial Notice, Dckt. No. 10, Ex. 1.

22  Specifically, defendants argue that since plaintiff was not a party to the loan transaction, she

23  cannot state a RESPA claim that the cost of the loan was higher as a result of kickbacks between

24  real estate providers related to the loan.  Dckt. No. 22 at 4.

25         As discussed above, plaintiff acknowledges that she was not the owner of the subject

26  property at the time of the loan origination at issue nor did she obtain the loan at issue.  Since

9

1  plaintiff's RESPA claim is based on allegations surrounding the loan origination, that claim must

2  be dismissed without leave to amend for lack of standing.

3         Further, as SPS argues, since SPS was "not in any way involved in the loan origination

4  process" and instead "is merely the servicer to the Subject Loan," Dckt. No. 9 at 16, plaintiff has

5  not and cannot state a RESPA claim against SPS.

6         Moreover, plaintiff's RESPA claim is barred by the statute of limitations. *See* Dckt. No.

7  9 at 17; Dckt. No. 22 at 5.  The statute of limitations for violation of Section 8 of RESPA,12

8  U.S.C. § 2607, is one year.  12 U.S.C. § 2614.  Since the loan at issue closed on August 18,

9  2006, but this action was not filed until December 17, 2009, and since plaintiff has not alleged

10  any facts suggesting that the statute of limitations should be equitably tolled, plaintiff's RESPA

11  claim is barred by the statute of limitations.[10]

12      3.    TILA

13         Defendants move to dismiss plaintiff's third claim for relief, which alleges that

14  defendants violated TILA, 15 U.S.C. §§ 1601 *et seq*., by failing to make certain disclosures and

15  improperly calculating the annual percentage rate at the time the refinance loan at issue closed in

16  August 2006.  Dckt. No. 1 at 34-35.  Again, defendants argue that plaintiff is not the real party in

17  interest and lacks standing.  As discussed above, the claim is premised on alleged misconduct at

18  the origination stage of the loan at issue but plaintiff did not have an interest in the subject

19  property at the time the loan originated (in August 2006).  Dckt. No. 9 at 15-16; Dckt. No. 22 at

20  3-5; *see also* Def. SPS's Req. for Judicial Notice, Dckt. No. 10, Ex. 1.

21

22       [10] Plaintiff states in her opposition that SPS violated RESPA by reporting negative
information to the Credit Bureau without responding correctly to four qualified written request
23  (QWR) attempts.  Dckt. No. 37 at 6.  Since plaintiff provides no additional facts in support of that
allegation, the allegation, which is not in plaintiff's complaint, is insufficient to state a claim under
24  RESPA, which provides that "[i]f any servicer of a federally related mortgage loan receives a
qualified written request from the borrower (or an agent of the borrower) for information relating
25  to the servicing of such loan, the servicer shall provide a written response acknowledging receipt
of the correspondence within 20 days . . . unless the action requested is taken within such period."
26  12 U.S.C. § 2605(e)(1)(A).

As discussed above, plaintiff acknowledges that she was not the owner of the subject property at the time of the loan origination at issue nor did she obtain the loan at issue.  Since plaintiff's TILA claim is based on defendants' alleged failures to make disclosures and improper calculations of the annual percentage rate for the loan, plaintiff's TILA claim must be dismissed without leave to amend for lack of standing and because plaintiff is not the real party in interest.

Additionally, as SPS argues, since SPS was "not in any way involved in the loan origination process" and instead "is merely the servicer to the Subject Loan," Dckt. No. 9 at 16, plaintiff has not and cannot state a TILA claim against SPS.  *See Marks v. Ocwen Loan Servicing*, 2008 WL 344210, at *2 (N.D. Cal. Feb.6, 2008) (dismissing TILA claim with prejudice because "loan servicers are not liable under TILA . . . unless the loan servicer owned the loan obligation"); *id*. at *3 ("a TILA claim may be asserted against an assignee only for 'violations that a reasonable person can spot on the face of the disclosure statement or other assigned documents'").

Moreover, plaintiff's TILA claim is barred by the statute of limitations.  *See* Dckt. No. 9 at 17; Dckt. No. 22 at 5.  TILA is intended to protect consumers in credit transactions by requiring "meaningful disclosure of credit terms."  15 U.S.C. § 1601(a).  A lender's violation of TILA allows the borrower to seek damages or to rescind a consumer loan secured by the borrower's primary dwelling.  *Copeland v. Lehman Brothers Bank, FSB*, 2010 WL 2817173, at *5 (S.D. Cal. July 15, 2010).  However, a plaintiff's damage claims relating to improper disclosures under TILA are subject to a one-year statute of limitations, 15 U.S.C. § 1640(e), which runs from the time the loan transaction is consummated.  *King v. State of Cal.*, 784 F.2d 910, 915 (9th Cir.1986); *see also Meyer v. Ameriquest Mortgage Co.*, 342 F.3d 899, 902 (9th Cir. 2003) (failure to make the required disclosures under TILA occurs at the time the loan documents were signed).  Rescission claims under TILA "shall expire three years after the date of the consummation of the transaction or upon the sale of the property, whichever occurs first,"15 U.S.C. § 1635(f).  The right to rescission under TILA expires three days after the

1   necessary disclosures are provided to the borrower. 15 U.S.C. § 1635(a).

2         Although equitable tolling of TILA claims may be appropriate "in certain

3   circumstances," and can operate to "suspend the limitations period until the borrower discovers

4   or had reasonable opportunity to discover the fraud or non-disclosures that form the basis of the

5   TILA action," *King*, 784 F.2d at 914-15, when a plaintiff fails to allege facts demonstrating that

6   she could not have discovered the alleged violations by exercising reasonable diligence,

7   dismissal is appropriate. *Meyer*, 342 F.3d at 902-03 (refusing to apply equitable tolling to TILA

8   claim because the plaintiff was in full possession of all loan documents and did not allege any

9   concealment of loan documents or other action that would have prevented discovery of the

10  alleged TILA violations); *see also Hubbard v. Fid. Fed. Bank*, 91 F.3d 75, 79 (9th Cir.1996)

11  (finding that plaintiff was not entitled to equitable tolling of her TILA claim because "nothing

12  prevented [plaintiff] from comparing the loan contract, [the lender's] initial disclosures, and

13  TILA's statutory and regulatory requirements").  Plaintiff alleges no such facts here.  Since the

14  loan at issue closed on August 18, 2006, but this action was not filed until December 17, 2009,

15  and plaintiff has not alleged any facts supporting equitable tolling of the statute of limitations,

16  plaintiff's TILA claim is barred by the statute of limitations.

17        4.   <u>FCRA</u>

18        Defendants also move to dismiss plaintiff's fourth claim for relief, which alleges that

19  defendants violated FCRA, 15 U.S.C. § 1681(s)(2)(b), when they "wrongfully, improperly, and

20  illegally reported negative information as to the Plaintiff[] to one or more Credit Reporting

21  Agencies, resulting in Plaintiff[] having negative information on their credit reports and the

22  lowering of their FICO scores."  Dckt. No. 1 at 35.  SPS argues that plaintiff is not the real party

23  in interest and lacks standing to bring her FCRA claim since, as discussed above, the claim is

24  premised on alleged misconduct at the origination stage of the loan at issue but plaintiff did not

25  have an interest in the subject property at the time the loan at issue originated (in August 2006).

26  Dckt. No. 9 at 15-16; *see also* Def. SPS's Req. for Judicial Notice, Dckt. No. 10, Ex. 1.  SPS also

1  argues that since SPS was "not in any way involved in the loan origination process" and instead

2  "is merely the servicer to the Subject Loan, . . . Plaintiff has not and cannot allege facts to state

3  any claim stemming from the origination of the Subject Loan against SPS."  Dckt. No. 9 at 16.

4       As discussed above, plaintiff acknowledges that she did not own the property at issue at

5  the time of the loan origination and that she did not obtain the loan at issue.  However, because it

6  is not clear what plaintiff's FCRA claim is based on, it is not clear whether it is based on the loan

7  origination.[11]  Therefore, it is not clear whether plaintiff has standing to bring the claim or

8  whether SPS could have any liability for plaintiff's FCRA claim.  Regardless, plaintiff's FCRA

9  claim should be dismissed because the complaint fails to allege any facts demonstrating a breach

10  of any duty under the FCRA.  *See* Dckt. No. 9 at 18.  Specifically, plaintiff fails to allege that

11  defendants sent plaintiff a notice of dispute, that defendants failed to furnish notices of dispute

12  from plaintiff to the credit reporting agencies, and/or that defendants failed to investigate or

13  correct errors.  *Id.* at 18-19.  Instead, plaintiff has only alleged that defendants provided

14  "negative information on [plaintiff's] credit report" and the lowering of plaintiff's FICO score.

15  *Id.* at 19.  Accordingly, plaintiff's FCRA claim should be dismissed with leave to amend.

16       5.    Fraudulent Misrepresentation

17       Defendants also move to dismiss plaintiff's fifth claim for relief, for fraudulent

18  misrepresentation, which alleges that defendants knowingly and intentionally concealed material

19  information from plaintiff and misrepresented material information to plaintiff.  Dckt. No. 1 at

20  36.  As with the other claims, defendants argue that plaintiff is not the real party in interest and

21  lacks standing to bring her fraudulent misrepresentation claim since, as discussed above, the

22  claim is premised on alleged misconduct at the origination stage of the loan at issue yet plaintiff

23  did not have an interest in the subject property at the time the loan at issue originated.  Dckt. No.

24

25       [11]  Although plaintiff states in her opposition that SPS and NDSC violated the FCRA for their
non-disclosure of this continued dispute to the credit bureau agency and that SPS or NDSC have
26  continued to report false information related to the loan at issue, Dckt. No. 37 at 6, the complaint
just states that defendants provided negative information to credit reporting agencies.

9 at 15-16; Dckt. No. 22 at 3-5; *see also* Def. SPS's Req. for Judicial Notice, Dckt. No. 10, Ex. 1.  Defendants argue that the only fraud plaintiff alleges relates to the fraudulent inducement to get plaintiff to agree to the loan, but since plaintiff did not agree to the loan, she was not defrauded.  Dckt. No. 22 at 5.

As discussed above, plaintiff acknowledges that she was not the owner at the time of the loan origination nor did she obtain the loan at issue.  Since plaintiff's fraudulent misrepresentation claim is based on defendants' alleged misrepresentations and concealment of material information relating to the origination of that loan, plaintiff's fraudulent misrepresentation claim must be dismissed without leave to amend for lack of standing.

Further, as SPS argues, since SPS was "not in any way involved in the loan origination process" and instead "is merely the servicer to the Subject Loan," Dckt. No. 9 at 16, plaintiff has not and cannot state a fraudulent misrepresentation claim against SPS.

Moreover, plaintiff's fraudulent misrepresentation claim appears to be barred by the three year statute of limitations for fraud under California Code of Civil Procedure section 338(d).  *See* Dckt. No. 22 at 6.  "[A]s a general rule the limitations period starts at the consummation of the transaction."  *King*, 784 F.2d at 915.  Here, the alleged fraud relates to misrepresentations intended to induce plaintiff to accept the loan, but the loan was accepted more than three years prior to the inception of the lawsuit.  Since plaintiff does not allege when she discovered the fraud, or that the statute of limitations should be equitably tolled, the fraud claim should be dismissed as barred by the statute of limitations.  *See* Cal. Civ. Proc. Code § 338(d) (providing that the statute of limitations begins to run when plaintiff discovers the fraud).

Additionally, plaintiff's fraudulent misrepresentation claim fails to state a claim under Federal Rule of Civil Procedure 9(b), which requires fraud claims to be pled with particularity.  Dckt. No. 9 at 19.  To state a claim for fraud, a plaintiff must plead "'(a) misrepresentation; (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'"  *In re Napster, Inc. Copyright Litig*., 479 F.3d 1078, 1096

(9th Cir. 2007) (quoting *Small v. Fritz Cos., Inc*., 30 Cal. 4th 167, 173 (2003)); *see generally* Cal. Civ. Code §§ 1709-10.  "In all averments of fraud . . . , the circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b).  The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

Here, plaintiff does not identify specific representations or any factual detail about those representations.  Indeed, the complaint makes no distinction between "defendants" and otherwise fails to reference who allegedly made fraudulent representations, how the alleged misrepresentations were made, whether or not the "defendants" had the authority to speak, the content of their statements, or any facts necessary to state a fraud claim.  In other words, the complaint does not identify "'the who, what, when, where, and how'" of the alleged fraud.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).  Although plaintiff states in her opposition that "SPS and NDSC misrepresented themselves on the foreclosure documents and others; that SPS represented itself as beneficiary and NDSC as Agent for beneficiary on the Notice of Default document; that NDSC misrepresented itself on the Notice of Default by stating it was the trustee, substituted trustee or the agent for the trustee; and that SPS also stated it was the servicing agent at the same time on the Substitution of Trustee document," Dckt. No. 37 at 6, these allegations are not in plaintiff's complaint and still are insufficient to state a fraud claim under Rule 9(g).

6.   Breach of Fiduciary Duty

Defendants also move to dismiss plaintiff's sixth claim for relief, which alleges that defendants breached fiduciary duties they owed to plaintiff by fraudulently inducing plaintiff to enter into a mortgage transaction which was contrary to plaintiff's stated intentions, contrary to plaintiff's interests, and contrary to plaintiff's preservation of her home.  Dckt. No. 1 at 37.  As with the other claims, defendants argue that plaintiff is not the real party in interest and lacks

15

standing to bring her breach of fiduciary duty claim since.  As discussed previously, the claim is premised on alleged misconduct at the origination stage of the loan at issue.  However, plaintiff acknowledges that she was not the owner of the subject property at the time of the loan origination at issue nor did she obtain the loan at issue.  The did not have an interest in the subject property at the time the loan at issue originated in August 2006 and she did not obtain the loan.  Since plaintiff's breach of fiduciary duty claim is premised on her allegation that defendants induced her into the mortgage transaction which she elsewhere concedes she was not a part of, the claim fails and must be dismissed without leave to amend for lack of standing.

Additionally, as SPS argues, since SPS was "not in any way involved in the loan origination process" and instead "is merely the servicer to the Subject Loan, . . . Plaintiff has not and cannot allege facts to state any claim stemming from the origination of the Subject Loan against SPS."  Dckt. No. 9 at 16.

Moreover, plaintiff's breach of fiduciary duty claim fails because defendants did not owe plaintiff any fiduciary duties.  Dckt. No. 9 at 20; Dckt. No. 22 at 6.  "In order to plead a cause of action for breach of fiduciary duty, there must be shown the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach.  The absence of any one of these elements is fatal to the cause of action."  *Pierce v. Lyman*, 1 Cal. App.4th 1093, 1101 (1991).  "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."  *Nymark v. Heart Fed. Savings & Loan Ass'n*, 231 Cal. App.3d 1089, 1096 (1991).  Plaintiff has not alleged facts suggesting defendants stepped beyond the traditional role of a money lender or servicer, and therefore, has not sufficiently pled a claim for breach of fiduciary duty.  For this additional reason, plaintiff's claim for breach of fiduciary duty should be dismissed without leave to amend.

7.   Unjust Enrichment

Defendants move to dismiss plaintiff's seventh claim for relief, which alleges that

16

defendants had an implied contract with plaintiff to ensure that plaintiff understood all fees
which would be paid to defendants and to not charge any fees which were not related to the
settlement of the loan, that defendants had "full knowledge that a 'bait and switch' adjustable
rate predatory mortgage with an increase in the interest rate due to the [Yield Spread Premium]
paid to the Broker for the 'up sell' was not in the plaintiff's best interest," and that defendants
were unjustly enriched as a result.  Dckt. No. 1 at 38.  Again, defendants noted that plaintiff is
not the real party in interest and argue that she lacks standing to bring her unjust enrichment
claim since, as discussed above, the claim is premised on alleged misconduct at the origination
stage of the loan at issue when plaintiff had no interest in the subject property.  Dckt. No. 9 at
15-16; Dckt. No. 22 at 3-5; *see also* Def. SPS's Req. for Judicial Notice, Dckt. No. 10, Ex. 1.
The gist of the argument is that plaintiff did not own the property at issue and was not a party to
the loan and, therefore, any unjust enrichment was not at her expense.  Dckt. No. 22 at 5.

   As discussed above, plaintiff acknowledges that she was not the owner of the subject
property at the time of the loan origination at issue nor did she obtain the loan at issue.  Her
unjust enrichment claim is based on allegations surrounding the origination of the loan at issue,
yet she concedes that she was not involved in that transaction and could not have relied on any
representations made during the loan origination.  Accordingly, plaintiff's unjust enrichment
claim should be dismissed without leave to amend for lack of standing and because plaintiff is
not the real party in interest.

   Moreover, as SPS argues, SPS was likewise "not in any way involved in the loan
origination process."  Dckt. No. 9 at 16. Instead it "is merely the servicer to the Subject Loan, . .
. Plaintiff has not and cannot allege facts to state any claim stemming from the origination of the
Subject Loan against SPS." *Id.*  Additionally, as SPS argues, plaintiff's unjust enrichment claim
against SPS fails because plaintiff has failed to allege any wrongdoing by SPS or any benefit

1  received by SPS.[12]  *See id.* at 20.

2       8.   Civil Conspiracy

3       Defendants move to dismiss plaintiff's eighth claim for relief, for civil conspiracy, which

4  alleges that in connection with the application for and consummation of the refinance loan at

5  issue, defendants agreed to engage in a conspiracy to defraud plaintiff.  Dckt. No. 1 at 38.

6  Dismissal is sought for similar reasons; SPS argues that plaintiff is not the real party in interest

7  and lacks standing to bring her conspiracy claim since the claim is premised on alleged

8  misconduct at the origination stage of the loan at issue when plaintiff lacked any interest in the

9  subject property.  Dckt. No. 9 at 15-16; *see also* Def. SPS's Req. for Judicial Notice, Dckt. No.

10  10, Ex. 1.

11      As plaintiff has acknowledged that she was not the owner of the subject property at the

12  time of the loan origination at issue nor did she obtain the loan at issue, this claim, too,

13  necessarily fails.  Like the other claims, her civil conspiracy claim is based on defendants'

14  alleged conduct in connection with the application for and consummation of the refinance loan

15  which simply did not involve plaintiff.  Accordingly, she has not alleged facts sufficient to

16  establish that she has standing to pursue this claim.

17      Additionally, as SPS argues, it was "not in any way involved in the loan origination

18  process."  Dckt. No. 9 at 16. Instead it "is merely the servicer to the Subject Loan, . . . [and]

19  Plaintiff has not and cannot allege facts to state any claim stemming from the origination of the

20  Subject Loan against SPS."  *Id.*  Moreover, plaintiff offers no specific allegations regarding what

21  types of wrongful acts were allegedly committed or by which defendants, and she provides no

22  facts in support of her allegation that there was an agreement among the defendants.  Dckt. No. 9

23

24      [12]  Although plaintiff states in her opposition that "CMG was unjustly enriched by selling
   the servicing rights of this loan that they paid the mortgage broker ($738) (YSP) a yield spread
   premium *bonus* for, to inflate the interest rate which made the final loan amount inaccurate. . . .";
25  that "SPS was also unjustly enriched by their being paid by USBNA to service this fraudulent loan";
   and that "NDSC was also unjustly enriched by their monetary payment for their part in the
26  foreclosure process," Dckt. No. 37 at 7, those allegations are not in plaintiff's complaint.

at 21-22.  A conspiracy is not an independent cause of action, but is instead "a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-11 (1994).  Liability for civil conspiracy generally requires three elements: (1) formation of a conspiracy (an agreement to commit wrongful acts); (2) operation of a conspiracy (commission of the wrongful acts); and (3) damage resulting from operation of a conspiracy.  *Id*. at 511.  A civil conspiracy is therefore activated by the commission of an underlying wrongful act.  *Id.*  Plaintiff's bare allegations that defendants conspired to defraud plaintiff are insufficient to state a claim for civil conspiracy.  Plaintiff must allege facts showing the role each defendant allegedly played in the conspiracy, which she has not done.

       9.    Civil RICO

      Defendants also move to dismiss plaintiff's ninth claim for relief, for civil RICO, 18 U.S.C. § 1962(a)-(d), which alleges that "Defendants' actions and use of multiple corporate entities, multiple parties, and concerted predetermined acts and conduct specifically designed to defraud Plaintiff[] constitutes an 'enterprise,' with the aim and objective of the enterprise being to perpetrate a fraud upon the Plaintiff[] through the use of intentional nondisclosure, material misrepresentation, and creation of fraudulent loan documents."  Dckt. No. 1 at 39.  Here, too, SPS argues that plaintiff is not the real party in interest and lacks standing to bring a civil RICO claim.  As with her other claims, the RICO claim is premised on alleged misconduct at the loan origination stage.  Plaintiff did not have an interest in the subject property at the time the loan at issue originated.  Dckt. No. 9 at 15-16; SPS's Req. for Judicial Notice, Dckt.No. 10, Ex. 1.

      Her civil RICO claim is also predicated on defendants' alleged conduct in connection with the application for and consummation of the refinance loan, a process that simply did not involve plaintiff.  As with her other claims, plaintiff's acknowledgment that she was not the owner of the subject property at the time of the loan origination at issue and that she did not

1  obtain the loan at issue is fatal to this claim.  She was not the loan applicant, did not have an

2  interest in the property, and she lacks standing to pursue the claim.

3      Further, as SPS argues, since it was "not in any way involved in the loan origination

4  process" and instead "is merely the servicer to the Subject Loan, . . . Plaintiff has not and cannot

5  allege facts to state any claim stemming from the origination of the Subject Loan against SPS."

6  Dckt. No. 9 at 16.

7      Additionally, plaintiff's civil RICO claim must be dismissed because the complaint does

8  not allege the predicate acts that RICO requires to be pled, and no pattern of racketeering activity

9  is or can be alleged.  Dckt. No. 9 at 22; Dckt. No. 22 at 6-7.  RICO makes it unlawful for any

10  person to: (a) use or invest income from a pattern of racketeering activity to acquire an interest

11  in, establish, or operate an enterprise; (b) acquire or maintain an interest in an enterprise through

12  a pattern of racketeering activity; (c) conduct or participate in the affairs of an enterprise through

13  a pattern of racketeering activity; or (d) conspire to do any of the above. 18 U.S.C. § 1962(a)-(d).

14  Although plaintiff's complaint does not specify which subsection of RICO was allegedly

15  violated by defendants, the allegations in the complaint do not support a claim under any of the

16  subsections.  Because plaintiff has not alleged, and does not appear to be able to allege, any

17  pattern of racketeering activity by defendants, and instead only alleges that she was defrauded on

18  one mortgage transaction, this claim is insufficient to withstand a motion to dismiss.

19      10.   Claim to Set Aside Illegal Trustee Sale

20      Plaintiff's tenth claim for relief seeks to set aside the trustee sale.  Plaintiff asserts in this

21  claim that defendants "lack standing to bring about foreclosure proceedings on plaintiff's home

22  because none of them are the holder in due course of Plaintiff's original promissory note at the

23  time they commenced foreclosure proceedings."  Dckt. No. 1 at 40.  Defendants move to dismiss

24  this claim, arguing that plaintiff has not alleged a tender of a sum sufficient to cure the default,

25  which is a condition precedent to any action challenging a foreclosure.  Dckt. No. 9 at 25.  SPS

26  also argues that plaintiff's argument that defendants must be a holder of the note in order to

foreclose is without merit.  *Id.* at 26.

A plaintiff seeking to set aside a foreclosure sale must first allege tender of the amount of the secured indebtedness. *Abdallah v. United Sav. Bank*, 43 Cal. App. 4th 1101, 1109 (1996) (citing *FPCI RE-HAB 01 v. E & G Inv., Ltd.*, 207 Cal. App.3d 1018, 1021-22 (1989)); *Smith v. Wachovia*, 2009 WL 1948829, at *3 (N.D. Cal. July 6, 2009).  Without pleading tender or the ability to offer tender, a plaintiff cannot state a cause of action to set aside a foreclosure sale. *Karlsen v. Am. Sav. & Loan Ass'n*, 15 Cal. App. 3d 112, 117 (1971) (citing *Copsey v. Sacramento Bank*, 133 Cal. 659, 662 (1901)); *Smith*, 2009 WL 1948829, at *3; *Anaya v. Advisors Lending Group*, 2009 WL 2424037, at *10 (E.D. Cal. Aug. 5, 2009) ("An action to set aside a foreclosure sale, unaccompanied by an offer to redeem, does not state a cause of action which a court of equity recognizes."); *Pantoja v. Countrywide Home Loans, Inc*., 640 F. Supp. 2d 1177, 1183-84 (N.D. Cal. July 9, 2009) ("Under California law, in an action to set aside a trustee's sale, a plaintiff must demonstrate that he has made a 'valid and viable tender [offer] of payment of the indebtedness.'").

Plaintiff has not alleged facts that warrant setting aside the foreclosure sale.  Even if she had, however, she does not allege tender or the ability to offer tender.  Although plaintiff states in her opposition that she wants the court to determine the amount she needs to tender, dckt. No. 37 at 12, her failure to allege in the complaint that she has the ability to tender the amount of the indebtedness is fatal to her claim to set aside the trustee's sale.  This claim should therefore be dismissed with leave to amend.  The court notes, however, that to the extent plaintiff contends that the foreclosure was invalid because defendants do not possess the original promissory note, the a claim is not cognizable and that part of her claim is dismissed without leave to amend. California law "does not require possession of the note as a precondition to non-judicial foreclosure under a Deed of Trust." *Alicea v. GE Money Bank*, 2009 WL 2136969 at *2 (N.D. Cal. July 16, 2009); *see also De Valle v. Mortgage Bank of Cal.*, 2010 WL 1813505, at *1-2 (E.D. Cal. May 5, 2010); *Nool v. HomeQ Servicing*, 653 F. Supp. 2d 1047, 1053 (E.D. Cal.

1    2009).

2           11.    <u>Quiet Title</u>

3           Defendants move to dismiss plaintiff's eleventh claim for relief, for quiet title, in which

4    plaintiff seeks a declaration that the title to the property at issue is vested in plaintiff alone and a

5    declaration that the defendants are enjoined from asserting any estate, right, title, or interest in

6    the property.  Dckt. No. 1 at 41.  SPS argues that this claim fails because it is dependent upon

7    plaintiff's defective complaint.  Dckt. No. 9 at 28.  SPS also argues that plaintiff fails to specify

8    which defendant claims an interest in the property and fails to specify a date as to which quiet

9    title is sought.  *Id.*

10          To establish a claim for quiet title, plaintiff must file a verified complaint that alleges: (a)

11   a description of the property; (b) plaintiff's title as to which a determination is sought; (c) the

12   adverse claims to the title; (d) the date as to which the determination is sought; and (e) a prayer

13   for the determination of title.  Cal. Civ. Proc. Code § 761.020.  Here, plaintiff fails to explain the

14   grounds on which her claim is based, as required by section 761.020(c), other than a conclusory

15   allegation that defendants are not the holders in due course of the promissory note or deed of

16   trust for the property.  Nor has plaintiff alleged tender or the ability to offer tender.  *See Kelley v.*

17   *Mortg. Elec. Registration*, 642 F. Supp. 2d 1048, 1057 (N.D. Cal. 2009) ("Plaintiffs have not

18   alleged . . . that they have satisfied their obligation under the Deed of Trust.  As such, they have

19   not stated a claim to quiet title."); *see also Distor v. U.S. Bank, NA*, 2009 WL 3429700, at *6

20   (N.D. Cal. Oct. 22, 2009) ("plaintiff has no basis to quiet title without first discharging her debt,

21   and ... she has not alleged that she has done so and is therefore the rightful owner of the

22   property").  Therefore, plaintiff's quiet title claim is insufficient to withstand a motion to dismiss

23   under *Twombly*, 550 U.S. at 555 and should be dismissed with leave to amend.

24          12.    <u>California Business and Professions Code Section 17200</u>

25          Defendants move to dismiss plaintiff's twelfth claim for relief, which alleges only that

26   defendants violated California Business and Professions Code section 17200 by "engag[ing] in

1   unfair business practices, causing injury and damages to plaintiff."  Dckt. No. 1 at 41.  SPS

2   argues that plaintiff is not the real party in interest and lacks standing to bring her section 17200

3   claim since, as discussed above, the claim is premised on alleged misconduct at the origination

4   stage of the loan at issue but plaintiff did not have an interest in the subject property at the time.

5   Dckt. No. 9 at 15-16; *see also* SPS's Req. for Judicial Notice, Dckt. No. 10, Ex. 1.  SPS again

6   also argues that since it was "not in any way involved in the loan origination process" and

7   instead "is merely the servicer to the Subject Loan, . . . Plaintiff has not and cannot allege facts

8   to state any claim stemming from the origination of the Subject Loan against SPS."  Dckt. No. 9

9   at 16.

10          As with the other claims discussed above, plaintiff acknowledges that she did not own

11  the property at issue at the time of the loan origination and that she did not obtain the loan at

12  issue.  However, because it is not clear what plaintiff's section 17200 claim is based on, it is not

13  clear whether it is based on the loan origination.[13]  Therefore, it is not clear whether plaintiff has

14  standing to bring the claim or whether SPS could have any liability for the claim.  Regardless,

15  plaintiff's section 17200 claim must be dismissed because the complaint fails to allege sufficient

16  facts demonstrating a violation of section 17200.  *See* Dckt. No. 9 at 18.

17          California's Unfair Competition Law, section 17200, prohibits any "unlawful, unfair or

18  fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  Section 17200

19  incorporates other laws and treats violations of those laws as unlawful business practices

20  independently actionable under state law.  *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d

21  1042, 1048 (9th Cir. 2000).  Violation of almost any federal, state or local law may serve as the

22  basis for a section 17200 claim.  *Saunders v. Superior Court*, 27 Cal. App.4th 832, 838-39

23  (1994).  In addition, a business practice may be "unfair or fraudulent in violation of [section

24

25          [13] Although plaintiff states in her opposition that SPS and NDSC violated the FCRA for their
non-disclosure of this continued dispute to the credit bureau agency and that SPS or NDSC have
26  continued to report false information related to the loan at issue, Dckt. No. 37 at 6, the complaint
just states that defendants provided negative information to credit reporting agencies.

17200] even if the practice does not violate any law." *Olszewski v. Scripps Health*, 30 Cal. 4th 798, 827 (2003).

Here, plaintiff alleges that defendants engaged in unfair business practiced under section 17200.  To state a claim for unfair business practices, a plaintiff must plead that "(1) the consumer injury is substantial, (2) the injury is not outweighed by any countervailing benefits to consumers or competition, and (3) the injury is one that consumers themselves could not reasonably have avoided."  *Morgan v. AT & T Wireless Svcs., Inc.*, 177 Cal. App. 4th 1235, 1254-55 (2009) (citation omitted).  Plaintiff does not make any such allegations.  Instead, she lumps all of the defendants together and simply alleges that they have all engaged in "unfair business practices."  That allegation is insufficient to withstand a motion to dismiss under *Twombly*, 550 U.S. at 555.  Accordingly, plaintiff's section 17200 claim should be dismissed with leave to amend.

13.   <u>Wrongful Foreclosure</u>

Defendants move to dismiss plaintiff's thirteenth claim for relief, which alleges that defendants failed to comply with California Civil Code sections 2923.5 and 2923.6.  Dckt. No. 1 at 42.  SPS argues that there is no private right of action under section 2923.5 or 2923.6.  Dckt. No. 9 at 27.  SPS also argues that plaintiff's wrongful foreclosure claim fails because plaintiff has not alleged a tender of a sum sufficient to cure the default, which is a condition precedent to any action challenging a foreclosure, and that plaintiff's argument that defendants must be a holder of the note in order to foreclose is without merit.  Dckt. No. 9 at 25, 26.

California Civil Code section 2923.5(a) provides that "a mortgagee, trustee, beneficiary, or authorized agent may not file a notice of default pursuant to Section 2924 until 30 days after initial contact is made" to the borrower in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure.  Cal. Civ. Code § 2923.5(a)(1), (2).  Section 2923.5(b) requires "a notice of default filed pursuant to Section 2924 [to] include a declaration that the mortgagee, beneficiary, or authorized agent has contacted the borrower, [or]

has tried with due diligence to contact the borrower as required by this section . . . ." *Id.* §

2923.5(b).  Plaintiff's complaint alleges only that defendants failed to comply with section

2923.5.  It does not include any factual allegations, that if taken as true, constitute such a failure.

Dckt. No. 1 at 42.  This is insufficient to state a claim.[14]  Moreover, a California Court of Appeal

recently held that section 2923.5 provides a pre-sale remedy *only* and that the only available

remedy is a postponement of the foreclosure sale.  *Mabry v. Superior Court*, 185 Cal. App. 4th

208, 225 (Cal. Ct. App. June 2, 2010).  Once the sale is held, as it was here, the statute is no

longer applicable.  *Id.*

       Finally, California Civil Code section 2923.6 does not create a private right of action.

*Mabry*, 185 Cal. App. 4th at 223 (stating that section 2923.6 "does not operate substantively"

and instead "merely expresses the hope that lenders will offer loan modifications on certain

terms"); *see also Aguilera v. Hilltop Lending Corp.*, 2010 WL 3340566, at *5 (N.D. Cal. Aug.

25, 2010) ("Nor does Plaintiff have any recourse under section 2923.6, which the court in *Mabry*

confirmed is, contrary to section 2923.5, not privately-enforceable.").  Therefore, plaintiff's

wrongful foreclosure claims under California Civil Code sections 2923.5 and 2923.6 must be

dismissed without leave to amend.

       14.   Usury

       Defendants move to dismiss plaintiff's fourteenth claim for relief, which alleges that

defendants charged an interest rate that was greater than state law permitted.  Dckt. No. 1 at 42.

Defendants again argue that plaintiff is not the real party in interest and lacks standing.  As

discussed above, this claim, like her others, is premised on alleged misconduct at the origination

stage of the loan and plaintiff did not have any interest in the subject property at that time.  Dckt.

---

    [14]  Indeed, it appears unlikely plaintiff can allege such a claim in light of the declarations
submitted by SPS indicating that SPS and NDSC complied with section 2923.5.  *See* Def. SPS's
Req. for Judicial Notice, Dckt. No. 10, Exs. 2, 6.  Nonetheless, this motion is before the court under
Rule 12(b) and the court confines itself to the allegations of the complaint for purposes of ruling on
the motion.

No. 9 at 15-16; Dckt. No. 22 at 3-5; *see also* Def. SPS's Req. for Judicial Notice, Dckt. No. 10, Ex. 1.  Specifically, defendants argue that since plaintiff was not a party to the loan, the allegedly usurious terms do not affect her.  Dckt. No. 22 at 5.

Again, plaintiff acknowledges that she was not the owner of the subject property at the time of the loan origination.  Nor did she obtain the loan at issue.  The usury claim is based on an interest rate charged on a loan that plaintiff did not obtain.  Therefore plaintiff lacks standing and the usury claim must be dismissed without leave to amend.

Moreover, plaintiff's claim for usury fails for the additional reason that she does not allege that the loan's interest rate is in excess of the statutory maximum rate.  Dckt. No. 9 at 24; Dckt. No. 22 at 8.  Nor can she.  The interest rate as stated on the loan documents is fixed at 6.625%.  *See* Def. SPS's Req. for Judicial Notice, Dckt. No. 10, Ex. 1, at 22.  The California Constitution provides, "No person, association, copartnership or corporation shall by charging any fee, bonus, commission, discount or other compensation receive from a borrower more than the interest authorized by this section upon any loan or forbearance of any money, goods or things in action." Cal. Const. art. XV, § 1.  "The essential elements of usury are: (1) The transaction must be a loan or forbearance; (2) the interest to be paid must exceed the statutory maximum; (3) the loan and interest must be absolutely repayable by the borrower; and (4) the lender must have a willful intent to enter into a usurious transaction." *Ghirardo v. Antonioli*, 8 Cal. 4th 791, 798 (1994) (citations omitted).  The California Constitution caps interest rates on secured loans at ten percent per year, or five percent over the amount charged by the Federal Reserve, whichever is greater.  Cal. Const. art. XV, § 1(2); *see also 321 Henderson Receivables Origination LLC v. Sioteco*, 173 Cal. App. 4th 1059, 1076 (2009) ("Under current California law, a loan that charges an interest rate greater than 10 percent per annum is usurious.").  Here, the amount charged by the Federal Reserve was 6.25% on the 25th day of the month preceding the loan consummation (July 25, 2007).  Cal. Const. art. XV, § 1(2); CMG's Req. for Judicial

1    Notice, Dckt. No. 23, Ex. A.[15]  The interest rate of 6.625% on the loan documents is therefore

2    not usurious.  Accordingly, plaintiff's claim for usury should be dismissed without leave to

3    amend.

4              15.    <u>Predatory Lending</u>

5              Defendants also move to dismiss plaintiff's fifteenth claim for relief, which alleges that

6    defendants engaged in predatory lending practices, in violation of California Financial Code

7    sections 4970 through 4979.8.  Dckt. No. 1 at 43-44.  This claim, too, is predicated on conduct

8    that allegedly occurred at the time of the loan origination and involved a loan that plaintiff did

9    not obtain.  Thus, defendants argue that plaintiff standing as to this claim as well.  Dckt. No. 9 at

10   15-16; Dckt. No. 22 at 3-5; *see also* Def. SPS's Req. for Judicial Notice, Dckt. No. 10, Ex. 1.

11   Given plaintiff's acknowledgement that she was not the owner of the subject property at the time

12   of the loan origination at issue and that she did not obtain the loan at issue, she lacks standing to

13   assert a claim under these statutory provisions.  Moreover, given that plaintiff was never a party

14   to the loan, this predatory lending claim could not relate to any activity after the loan was

15   consummated.  Nor does the complaint include any allegation related to activity by defendant

16   after the loan closed.

17             Additionally, plaintiff has not alleged facts showing that the loan obtained falls within the

18   scope of California's predatory lending laws.  *See* Cal. Fin. Code § 4970(b), (d).  She also fails

19   to plead how these laws were violated.  Nor has she alleged facts to show that SPS, which was

20   not the original lender, could be held liable for predatory lending.  *See* Cal. Fin. Code § 4979 .8

21   (prohibiting application of predatory lending laws "on an assignee that is a holder in due

22   course").

23             For all of these reasons, this claim must be dismissed without leave to amend.

24

25   _____

26        [15]  The court grants CMG's request for judicial notice of this exhibit, which is a statement
     from the Federal Reserve Bank of San Francisco's website regarding discount rates .

1    16.    Unfair Debt Collection

2    Defendants move to dismiss plaintiff's sixteenth claim for relief, which alleges that

3    defendants violated the FDCPA and California's Rosenthal Fair Debt Collections Act

4    ("RFDCPA").  Dckt. No. 1 at 44-45.  SPS argues that although it is unclear from plaintiff's

5    complaint, any alleged violation of the FDCPA or RFDCPA is grounded upon the foreclosure,

6    and these statutes are inapplicable to foreclosure claims.  Dckt. No. 9 at 29-30.

7    Plaintiff's claims for violation of the FDCPA and RFDCPA fail to allege any facts that

8    could support a finding that the defendants violated either statute.  Moreover, as defendants

9    argue, the claims fail for the additional reasons that the FDCPA and RFDCPA do not apply to

10   lenders or mortgage servicers.  The FDCPA applies only to a "debt collector," defined as "a

11   person who uses any instrumentality of interstate commerce or the mails in any business the

12   principal purpose of which is the collection of any debts, or who regularly collects or attempts to

13   collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15

14   U.S.C. § 1692a.  The definition explicitly excludes creditors as well as loan originators or

15   assignees who obtained the right to collect on loan when it was not in default. 15 U.S.C. §

16   1692a(4), § 1692a(6)(A) or (B), § 1692a(ii) and (iii).  Additionally, to be liable under the

17   RFDCPA, a defendant must be a "debt collector."  *Izenberg v. ETS Services, LLC*, 589 F. Supp.

18   2d 1193, 1199 (C.D. Cal. 2008) (citing *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995)).  A "debt

19   collector" under the RFDCPA is defined as "any person who, in the ordinary course of business,

20   regularly, on behalf of himself or herself or others, engages in debt collection."  Cal. Civ. Code §

21   1788.2(c).

22   Plaintiff does not allege that defendants are debt collectors; rather, she alleges that

23   defendants are creditors and servicers of the loan at issue.  Accordingly, plaintiff's claim for

24   violations of the FDCPA and RFDCPA should be dismissed without leave to amend.

25   17.    Slander of Title

26   Finally, defendants move to dismiss plaintiff's seventeenth claim for relief, for slander of

28

1    title, which alleges that defendants "made a false and malicious written or spoken public

2    statement disparaging her title to property." Dckt. No. 1 at 45.  SPS argues that all of the acts

3    done by defendants in furtherance of the foreclosure sale were privileged acts under the

4    California Civil Code and that plaintiff does not specify what statements were made but instead

5    makes conclusory allegations that do not state a claim for slander of title.  Dckt. No. 9 at 30-31.

6         Although not explicitly stated, the statements of which plaintiff complains appear to be

7    the publicly recorded notices concerning the foreclosure sale of the property at issue.  Plaintiff

8    identified no other statement or writing by defendants that pertains to her title to property.

9    Slander of title is "a tortious injury to property resulting from unprivileged, false, malicious

10   publication of disparaging statements regarding the title to property owned by plaintiff, to

11   plaintiff's damage." *Southcott v. Pioneer Title Co.*, 203 Cal.App.2d 673, 676 (1962) (citations

12   omitted).  Plaintiff's slander of title claim fails because notices filed pursuant to a non-judicial

13   foreclosure action constitute privileged communications.  Cal. Civ. Code § 2924(d).

14   Accordingly, plaintiff's slander of title claim must be dismissed.  Plaintiff will be given leave to

15   amend this claim only to the extent that she can plead specific facts showing that defendants

16   disseminated *unprivileged,* false and malicious communications regarding her title to property.[16]

17   IV.    Plaintiff's Motions to Amend and to Join Parties

18        Plaintiff moves to amend her complaint "to articulate a more definitive statement and to

19   correct any problems with the initial complaint."  Dckt. No. 46.  Specifically, plaintiff seeks

20   "leave to make a clearer assertion of [her] claims to satisfy the defendants' argument that

21   Plaintiff hasn't stated a claim to which relief can be granted and that being willing to tender the

22   alleged debt wasn't stated correctly, because of asking the judge to decide due to multiple debt

23   amounts in the false disclosure documents."  *Id.* at 2.  This request is already addressed above as

24

---

25       [16] Because the undersigned recommends that plaintiff's entire complaint be dismissed, the
     court does not address SPS's motion for a more definite statement and motion to strike.  Dckt. No.
26   9 at 31-33.

to each claim.  Where it appears that plaintiff might be able to cure the deficiencies in the complaint, the court has specifically stated that the dismissal should be with leave to amend.  As to those claims, where any amendment would be futile, the court has stated that the dismissal must be without leave to amend.  *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (district courts must afford pro se litigants an opportunity to amend to correct any deficiency in their complaints); *Noll*, 809 F.2d at 1448 (While the court ordinarily would permit a pro se plaintiff to amend, leave to amend should not be granted where it appears amendment would be futile).

Plaintiff also moves to join plaintiff Angelo Webb "since this loan originated with him," and since she only started the proceedings without Webb because he was "unavailable to sign the claim at the time" that it was filed.  Dckt. No. 28 at 1, 4.  In addition, plaintiff seeks to add U.S. Bank as a defendant since "there's a three year gap after 2006 and a two year gap prior to 2006 in the assignment of mortgage (chain of title)" and plaintiff believes that adding that defendant will help explain the gaps in the chain of title.  *Id.* at 2, 5.  Finally, plaintiff seeks to add MERS as a defendant "since the allegations about the process of this loan in question involved this organization also."  Dckt. No. 44 at 1.  Plaintiff contends that MERS was the alleged beneficiary of the promissory note executed by Webb on August 18, 2006 and that MERS claims to hold a legal title to the property at issue.  *Id.* at 4, 5.

A party needs leave of the court to amend a pleading after a responsive pleading has been filed, but such leave should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2).  The Ninth Circuit has construed Rule 15(a) broadly, requiring that leave to amend be granted with "extreme liberality."  *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir.1990); *Poling v. Morgan*, 829 F.2d 882, 886 (9th Cir.1987) (describing a "strong policy permitting amendment").  When the underlying facts or circumstances may form the proper basis for relief, the opportunity to "test his claim on the merits" should be given to the plaintiff.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

1    Many of plaintiff's claims addressed herein fail because plaintiff is not the real party in

2  interest.  Because it appears Angelo Webb is the real party in interest on several of the claims,

3  plaintiff should be given an opportunity to join Webb as a co-plaintiff. Fed. R. Civ. P. 17(a)(3)

4  ("The court may not dismiss an action for failure to prosecute in the name of the real party in

5  interest until, after an objection, a reasonable time has been allowed for the real party in interest

6  to ratify, join, or be substituted into the action.").  However, plaintiff is reminded that as a *pro se*

7  plaintiff, she cannot represent Webb in this action.  *See McShane v. United States*, 366 F.2d 286

8  (9th Cir. 1966) ("While [plaintiff] may appear in propria persona in his own behalf (28 U.S.C.

9  § 1654), that privilege is personal to him.  He has no authority to appear as an attorney for others

10 than himself.").

11    Plaintiff should also be granted leave to add U.S. Bank and MERS as defendants, to the

12 extent plaintiff can allege claims against those defendants that are consistent with these findings

13 and recommendations.

14    Plaintiff is informed that the court cannot refer to prior pleadings in order to make an

15 amended complaint complete.  Local Rule 220 requires that an amended complaint be complete

16 in itself.  This is because, as a general rule, an amended complaint supersedes the original

17 complaint.  *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967).  Accordingly, once plaintiff files

18 an amended complaint, the original no longer serves any function in the case.  Therefore, "a

19 plaintiff waives all causes of action alleged in the original complaint which are not alleged in the

20 amended complaint," *London v. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir. 1981), and

21 defendants not named in an amended complaint are no longer defendants.  *Ferdik v. Bonzelet*,

22 963 F.2d 1258, 1262 (9th Cir. 1992).

23 V.    Defendant Select Portfolio Servicing, Inc.'s Motion to Expunge Lis Pendens

24    SPS also moves to expunge the Notice of Pendency of Action ("lis pendens") recorded

25 by plaintiff on December 28, 2009 and seeks monetary sanctions in the amount of $2,490.00 for

26 the attorney fees and costs of filing the motion to expunge.  SPS argues that the lis pendens was

1  recorded without substantial justification and should be expunged, pursuant to California Code

2  of Civil Procedure sections 405.31, 405.32, and 405.34, because plaintiff does not have a viable

3  pending cause of action affecting title to the real property at issue and has, instead, filed a

4  frivolous, dilatory, and bad faith complaint in an improper attempt to delay SPS's exercise of its

5  rights.  *Id.* at 2.

6       SPS contends plaintiff cannot establish the probable validity of any of her real property

7  claims (first, third, fifth, tenth, eleventh, thirteenth, and fifteenth) and that the second, fourth,

8  sixth, seventh, eighth, ninth, twelfth, fourteenth, sixteenth, and seventeenth claims are not real

9  property claims.  Specifically, SPS argues that the first and third claims are invalid because

10 plaintiff is not the real party in interest and the claims are barred by the statutes of limitations;

11 the fifth claim is invalid because plaintiff is not the real party in interest and plaintiff failed to

12 properly allege a fraud claim; the tenth claim is based on a misapplication of the law; the

13 eleventh claim is invalid because plaintiff has no interest in the property; the thirteenth claim is

14 invalid because there is no private right of action under the statutes plaintiff asserts as the basis

15 for the claim; and the fifteenth claim is invalid because plaintiff is not the real party in interest

16 and plaintiff has not stated a claim for predatory lending.  *Id.* at 14-20.  SPS also argues that

17 plaintiff has failed to allege tender, as required, and that U.S. Bank, as assignee of the Note and

18 Deed of Trust, is a bona fide purchaser entitled to title of the property because it paid value for

19 the property in good faith with no knowledge of any alleged wrongdoing as it acquired the

20 property after the alleged misconduct.  Thus, argues SPS, even if plaintiff's claims were valid,

21 they still would not defeat U.S. Bank's status as a bona fide purchaser.  *Id.* at 12-14.

22      Although the undersigned recommends that several of plaintiff's real property claims be

23 dismissed without leave to amend, plaintiff's tenth and eleventh claims to set aside the trustee

24 sale and for and quiet title constitute real property claims.  It may be that plaintiff will not be

25 able to establish any validity to these claims, but because plaintiff must be granted leave to

26 amend them the court cannot determine their probable validity at this stage.  Accordingly, SPS's

motion to expunge the lis pendens that was issued on December 24, 2009, *see* Dckt. No. 1 at 59-

62, should denied without prejudice to its renewal in any future dispositive motion under Rule 12

or Rule 56.

IV. CONCLUSION

Accordingly, it is hereby ORDERED that:

1. The status conference currently scheduled for September 29, 2010 is vacated; and

2. Plaintiff's motion to remand and for sanctions, Dckt. No. 19, is denied.

Further, it is RECOMMENDED that:

1. Defendant SPS's motion to dismiss plaintiff's complaint, Dckt. No. 9, be granted;

2. Defendant CMG's motion to dismiss plaintiff's complaint, Dckt. No. 26, be granted;

3. Plaintiff's complaint be dismissed in its entirety, with leave to amend as provided

herein;

4. Plaintiff's motions to amend and for joinder, Dckt. Nos. 28, 44, and 46, be granted in

part and denied in part;

5. Defendant SPS's motion to expunge a lis pendens recorded by or on behalf of

plaintiff, Dckt. No. 16, be denied without prejudice; and

6. Plaintiff be granted thirty days from the date of service of any order adopting these

findings and recommendations to file an amended complaint.  The amended complaint must bear

the docket number assigned to this case and must be labeled "Amended Complaint."  Plaintiff

must file an original and two copies of the amended complaint.  Failure to timely file an

amended complaint in accordance with this order will result in a recommendation this action be

dismissed and the case closed.

These findings and recommendations are submitted to the United States District Judge

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned

1   "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

2   within the specified time may waive the right to appeal the District Court's order. *Turner v.*

3   *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

4   DATED:  September 2, 2010.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE